IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

LEE PAPPAS BODY SHOP, INC., *et al.*,   )
                                                                   )
            Plaintiffs,   )
                                )
v.                                        )   Civil Action No. 3:20cv964–HEH
                               )
STATE FARM MUTUAL             )
AUTOMOBILE INSURANCE       )
COMPANY, *et al.*,                      )
                               )
            Defendants.     )

**<u>MEMORANDUM OPINION</u>**
(Dismissing the Complaint with Prejudice)

This matter is before the Court regarding whether there is jurisdiction over the remaining claim in this action, and if so, whether Plaintiffs[1] have adequately pled a claim for tortious interference with a business expectancy under Virginia law. Plaintiffs filed their Complaint (ECF No. 1) on November 7, 2014, asserting various antitrust and tort claims against Defendants.[2] As there are no federal claims remaining and the parties are

---

[1] Plaintiffs include the following entities: Lee Pappas Body Shop, Inc., David Brosius d/b/a Martins Auto Body Works, Inc., Art Walker Auto Service, Inc., and Whiteford Collision and Refinishing, Inc.

[2] Defendants include the following entities: State Farm Mutual Automobile Insurance Company; State Farm Fire and Casualty Company; United Services Automobile Association; USAA Casualty Insurance Company; USAA General Indemnity Company; Government Employees Insurance Company; GEICO General Insurance Company; GEICO Indemnity Company; GEICO Casualty; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Secure Insurance Company; Allstate Property and Casualty Insurance Company; Allstate Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Esurance Property and Casualty Insurance Company; Esurance Insurance Company; Nationwide Mutual Insurance Company; Nationwide Property and Casualty Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Fire Insurance Company; Erie

not diverse, the Court ordered that the parties submit a brief position paper adressing whether it continues to have subject matter jurisdiction over this case. (Briefing Schedule, ECF No. 197.) In the joint position paper, the parties state that the Court should exercise its discretion under 28 U.S.C. § 1367(c) and retain this case. (Joint Position Statement Regarding Supplemental Jurisdiction 1, 4, ECF No. 202, hereinafter "Jurisdiction Statement.") Additionally, to expedite resolution of this matter, the parties agreed that the briefing previously filed during the multidistrict litigation proceedings ("MDL") with respect to the pending Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a sufficient basis for this Court to make a ruling. (*Id.* at 5–6.)[3] Accordingly, for the reasons set forth below, the Court will exercise its discretion and retain jurisdiction over this matter but will dismiss the tortious interference claim with prejudice.

## I. BACKGROUND

This case has taken a circuitous path to arrive at its current posture. Plaintiffs originally filed the Complaint in the Eastern District of Virginia in 2014, alleging

---

Insurance Exchange; Virginia Farm Bureau Town and Country Insurance Company; the Travelers Home and Marine Insurance Company; Travelers Commercial Insurance Company; Travelers Property Casualty Insurance Company; Travelers Property Casualty Company of America; TRAVCO Insurance Company; LM General Insurance Company; LM Insurance Corporation; Alfa Specialty Insurance Corporation; Alfa Vision Insurance Corporation; Elephant Insurance Company; 21st Century Centennial Insurance; 21st Century Assurance Company; Dairyland Insurance Company; Safe Auto Insurance Company; AIG Property Casualty Company; Property and Casualty Insurance Company of Hartford; Harleysville Preferred Insurance Company; General Insurance Company of America; Donegal Mutual Insurance Company; and State Farm General Insurance Company.

[3] These briefs are a part of the record. (ECF No. 206, Exs. 1–3.)

violations of the Sherman Act, the Virginia Anti-Trust Act, and other Virginia laws, including claims for quantum meruit, unjust enrichment, quasi-estoppel, and tortious interference with a business relationship.[4] (Compl. ¶¶ 115–152.) As there were numerous other lawsuits raising the same claims nationwide, the Judicial Panel on Multidistrict Litigation ("JPML") transferred this case on December 16, 2014, to the Middle District of Florida for all pretrial matters. (ECF No. 16.) On February 20, 2015, the insurers collectively moved to dismiss the auto repair shops' complaints. (ECF No. 38–39.) The district court, adopting the magistrate judge's Report and Recommendation, dismissed all claims in five MDL complaints, including Plaintiffs'. *A&E Auto Body Shop, Inc v. 21st Century Centennial Ins. Co.*, 120 F. Supp. 3d 1352, 1355, 1368 (M.D. Fla. 2015). Although Plaintiffs objected, the district court adopted the magistrate judge's R&R and dismissed the claims.[5] *Id.* at 1368.

Sitting en banc, the United States Court of Appeals for the Eleventh Circuit affirmed in part and reversed in part the district court's decision. *Quality Auto Painting Ctr. of Roselle, Inc. v. State Farm Indemnity Co.*, 917 F.3d 1249, 1276 (11th Cir. 2019) (en banc). The court found that, for most of the claims, the allegations were insufficient; however, for the tortious interference with a business relationship claims, the court reversed because, despite the district court's holding to the contrary, the complaints

---

[4] As discussed in more depth below, the sole claim currently at issue is the tortious interference claim under Virginia law.

[5] The district court did make one alteration to the magistrate's R&R: a claim under the Oregon Unfair Credit Practices Act was to be dismissed with prejudice, rather than without prejudice.

3

provided adequate notice to each Defendant of the claims against it. *Id.* at 1274–75. As the court reversed solely on this issue, it did "not address the merits of the tortious interference claims."[6] *Id.* at 1275. Upon remand, Defendants moved to dismiss, and the motion was fully briefed. (ECF No. 88.) After additional consideration, the district court recommended remand from the MDL to the originating district court. The JPML agreed with the recommendation and ordered the cases be remanded, placing this matter once again before this Court. (ECF Nos. 91–92.)

Plaintiffs allege that Defendants have not properly conducted business in Virginia. Plaintiffs are autobody shops located in Virginia. (Compl. ¶ 51.) Over many years, Plaintiffs have worked with Defendants, who provide automobile insurance, by providing vehicle repairs for Defendants' policyholders. (Compl. ¶¶ 52–53.) In fact, insurance paying customers constituted approximately between seventy-five and ninety percent of Plaintiffs' business. (Compl. ¶ 62.) Defendants are responsible for paying Plaintiffs for the repairs made to their policyholders' vehicles. (Compl. ¶ 53.)

---

[6] The parties agree that the Eleventh Circuit's en banc opinion is binding in this case, with which the Court agrees, given that numerous issues in Plaintiffs' Complaint were decided. However, the parties also state that the Eleventh Circuit's decision in a related appeal of several other MDL cases, *Automotive Alignment & Body Services v. State Farm Mutual Automobile Insurance Co.*, 953 F.3d 707 (11th Cir. 2020), is also binding on this Court. Although this case may be helpful and persuasive as it resolves many of the same issues present in this case, this appeal out of the MDL involves different cases with actions originating from other states. Moreover, these plaintiffs amended their complaints, unlike Plaintiffs here, and the sole issues remaining here— jurisdiction and Virginia tort law—are not discussed in the decision. Therefore, despite the parties' joint agreement, the Court finds that it is not bound by the *Automotive Alignment* decision.

Defendants often enter into program agreements, also called direct repair program agreements, with autobody repair shops—including with Plaintiffs.[7] (Compl. ¶¶ 55, 57.) These agreements list the participating shop as a preferred provider in exchange for price reductions or increased priority. (Compl. ¶ 56.) Plaintiffs maintain that Defendants have a "practice of coercion and implied threats" to ensure that Plaintiffs comply with the terms. (Compl. ¶ 58.) Plaintiffs aver that failure to comply with these terms can result in removal from the preferred provider list or Defendants "steering" customers away from Plaintiffs' businesses. (*Id.*) For example, when attempting to negotiate lower labor rates, Defendants supposedly threatened Plaintiffs with removal from the direct repair program. (Compl. ¶¶ 81–86.) This practice of purportedly manipulative behavior also extended to material and repair costs and expenses. (Compl. ¶¶ 87–104.)

Should an auto repair shop not comply with the concessions and pricing Defendants desire, Plaintiffs contend that Defendants would "steer" its policyholders to "favored compliant shops through misrepresentation, insinuation, and casting aspersions upon the business integrity and quality of disfavored repair centers." (Compl. ¶ 105.) Defendants allegedly accomplished this by informing their policyholders that the auto shop is not on the preferred provider list; there have been customer complaints about the auto repair shop; the shop charges more than other auto repair shops and any extra costs are born by the policyholder themselves; the repairs will take longer than at other auto

---

[7] The Complaint does not explicitly state whether Plaintiffs and Defendants have actually entered into a direct repair program agreement. However, for the purposes of the Motion to Dismiss, the Court will assume without deciding that there was a direct repair program agreement between the parties.

repair shops; or Defendants cannot guarantee the work of the auto repair shop. (Compl. ¶ 106.) Plaintiffs explain that these implicit criticisms are often due to processes on the insurers' end. (Compl. ¶ 107.) For instance, a delay in the repairs may originate from the insurer's own delay in dispatching an appraiser to estimate the costs of any needed repairs. (*Id.*) Plaintiffs also state that this mischaracterization extends to other statements that Defendants communicated to their customers. (*Id.*) Although Defendants contend that the shop charges more, Plaintiffs believe that it is Defendants who control the amount covered under their policies. (*Id.*) Notably, no Defendant guarantees the work of any auto repair shops, but Plaintiffs claim that Defendants will communicate this fact to customers interested in certain shops to imply that Defendants can in fact guarantee the work of other preferred auto repair shops. (Compl. ¶¶ 108–09.)

In sum, Plaintiffs allege that Defendants have "engaged in malicious actions" and have attempted to interfere with Plaintiffs businesses by misrepresenting facts and failing to properly verify information. (Compl. ¶ 128.) Plaintiffs claim that Defendants' purpose is to punish Plaintiffs for not complying with their pricing and therefore direct Plaintiffs' potential customers elsewhere. (Compl. ¶ 129.) Moreover, Plaintiffs claim that they have been damaged by this behavior. (Compl. ¶ 130.)

### III. ANALYSIS

#### A. This Court will retain jurisdiction pursuant to 28 U.S.C. § 1367(c)

As the sole remaining claim is for tortious interference with a business relations ("tortious interference") under Virginia law, the parties have asked this Court to exercise supplemental jurisdiction over the tortious interference claim. (Jurisdiction Statement 2.)

To buttress their position, the parties note that the case has been pending for six years in federal court, significant resources have been expended, and there is a fully briefed dispositive motion pending. (*Id.*) Generally, "[f]ederal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quotations and citations omitted). Oftentimes, federal courts have original jurisdiction over a matter if there is a question of federal law or if the parties are diverse in citizenship and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1331, 1332. If a court has jurisdiction, it can exercise supplemental jurisdiction to retain jurisdiction over "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). As Plaintiffs' antitrust claims have been dismissed and the parties are not diverse, there is an open question with respect to this Court's retention of supplemental jurisdiction over this action.

Federal courts have wide discretion in choosing whether to retain supplemental jurisdiction once all original jurisdiction claims have been dismissed. § 1367(c). If there is federal question jurisdiction, there are four circumstances in which a district court may decline to exercise jurisdiction over a supplemental claim:

> (1) the claim raises a novel or complex issue of [s]tate law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

7

*Id.* Supplemental jurisdiction "is a doctrine of flexibility, designed to allow courts to deal with cases involving pendent claims in the manner that most sensibly accommodates a range of concerns and values." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Although district courts often dismiss claims once there is no longer original jurisdiction, courts can—and do—exercise their discretion to retain jurisdiction over supplemental claims, "tak[ing] into account judicially recognized factors constraining its exercise." *James v. Jacobson*, 6 F.3d 233, 239 (4th Cir. 1993) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 19 (1983)). Furthermore, the Court must actually exercise discretion, either expressly or implicitly—"deciding instead as if by general rule, or even arbitrarily." *Id.* (citing *Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 661–62 (1978)).

When determining whether to exercise its discretion, there are several factors the court may consider: (1) the "convenience and fairness to both parties"; (2) "the interests of judicial economy"; (3) "whether the amount claimed in the complaint was made in good faith"; (4) whether "a plaintiff might suffer serious prejudice from the dismissal of [the] action"; and (5) "the amount of time and energy that has already been expended." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citing *Cohill*, 484 U.S. at 350, n.7; *Growth Horizons, Inc. v. Delaware Cnty*, 983 F.2d 1277, 1284 (3d Cir. 1993)). Ultimately, the determination for exercising supplemental jurisdiction must be made on a case-by-case basis, as "the existence of some significant issue of state law best resolved in state court . . . could inform the trial court's determination whether to keep or dismiss

8

the case entirely." *Id.* at 112 (citing *McCullough v. Branch Banking & Trust Co., Inc.*, 844 F. Supp. 258, 260–62 (E.D.N.C. 1993), *aff'd*, 35 F.3d 127 (4th Cir. 1994)).

For example, in *Peter Farrell Supercars, Inc. v. Monsen*, the Fourth Circuit upheld the district court's decision to retain jurisdiction over the remaining state tortious interference claims once the federal question claim had been dismissed. 82 F. App'x 293, 297 (4th Cir. 2003). The district court observed that "the parties had completed substantial pre-trial preparation," and the court "was already familiar with the facts and issues," which weighed in favor of retaining jurisdiction. *Id.* The court concluded that a dismissal "would not have been fair to the parties, and also would not have been an efficient use of judicial resources." *Id.*

*Peter Farrell Supercars* is not unique. In fact, the Fourth Circuit has repeatedly affirmed cases where judicial economy considerations weighed heavily in favor of retaining jurisdiction. In *Crosby v. City of Gastonia*, the Fourth Circuit affirmed the district court's decision to retain jurisdiction over state contract claims when "the proceedings had been pending for more than three years, and the parties had already fully briefed summary judgment motions." 682 F. Supp. 2d 537, 545 (W.D.N.C. 2010), *aff'd*, 635 F.3d 634 (4th Cir. 2011). Additionally, in *Daly v. Zobel*, the Fourth Circuit affirmed the district court's decision to retain jurisdiction over a state malicious prosecution claim because "it was familiar with the facts and issues in the case, the action had progressed to the summary judgment stage, and a remand to state court would be a waste of judicial resources." 311 F. App'x. 565, 567 (4th Cir. 2008).

9

On the other hand, the Supreme Court has noted that critical decisions of state law "should be avoided both as a matter of comity and to promote justice between the parties." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726–27 (1966). For example, in *McCullough v. Branch Banking & Trust Co., Inc.*, after the dismissal of the plaintiff's federal Rehabilitation Act claim, the district court declined to exercise jurisdiction over remaining state claims, because the "complex and unsettled issues of North Carolina law would be more appropriately resolved by a North Carolina court." 844 F. Supp. at 261 ("[T]he interests of federalism and comity point strongly toward dismissal.").

Based upon the foregoing factors, this Court will retain jurisdiction over the remaining tortious interference claim. First, this case has been pending in federal court for over six years. *See Peter Farrell Supercars, Inc.*, 82 F. App'x at 297. Moreover, the remaining state claim does not present any novel state law issues and is often litigated in federal courts. *See, e.g., L-3 Commc'ns Corp. v. Serco, Inc.*, 926 F.3d 85 (4th Cir. 2019); *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584 (E.D. Va. 2005). As there has been lengthy federal litigation and the remaining claim is subject to a fully briefed dispositive motion, it would be inconvenient to remand the matter to state court to begin anew. *See Shanaghan*, 58 F.3d at 110. Thus, to avoid a significant waste of resources, the Court accordingly will exercise discretion and allow this matter to proceed in federal court.

10

## B. Plaintiffs have failed to state a claim for tortious interference

Plaintiffs claim that Defendants have tortiously interfered with their business expectancies because Defendants pushed policyholders away from Plaintiffs' businesses. Defendants argue that Plaintiffs have failed to state a plausible claim for tortious interference with a business expectancy because Plaintiffs have not sufficiently alleged any element of the tort. (Brief Supp. Mot. Dismiss 1, ECF No. 206-1.) Defendants raise several arguments supporting their motion. First, Plaintiffs have failed to identify any specific prospective customer or a reasonably certain business expectancy. (*Id.* at 18.) Second, there is no allegation that they knew of any business relations or expectancy. (*Id.* at 19.) Moreover, even if there was a known business expectancy, Plaintiffs have not alleged that Defendants acted improperly nor explained how they were actually damaged. (*Id.* at 19–20.) Resting solely upon the Eleventh Circuit's en banc decision, Plaintiffs state that they have plausibly alleged a claim for tortious interference with a business relationship. (Brief Opp'n Mot. Dismiss, ECF No. 206-2.)

In reviewing a motion to dismiss for failure to state a claim, [a court] must 'accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff.'" *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). A Rule 12(b)(6) motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (quoting *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992)). "A complaint need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Ray*,

948 F.3d at 226 (alteration in original) (quoting *Tobey*, 706 F.3d at 387). However, a "complaint must provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Allegations have facial plausibility 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Tobey*, 706 F.3d at 386 (quoting *Iqbal*, 556 U.S. at 679). A court, however, "need not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *Turner*, 930 F.3d at 644 (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). Legal conclusions enjoy no such deference. *Iqbal*, 556 U.S. at 678.

Generally, the district court does not consider extrinsic materials when evaluating a complaint under Rule 12(b)(6). The court, however, may consider "documents incorporated into the complaint by reference," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), in addition to documents "attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)). "[I]n the event of conflict between the bare allegations of the complaint and any exhibit attached . . . , the exhibit prevails." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016) (alteration in original) (quoting *Fayetteville*

*Inv'rs v. Com. Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991)). This is based on "the presumption that the plaintiff, by basing his claim on the attached document, has adopted as true the contents of that document." *Id.* at 167. However, "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it," as well as whether plaintiff relied on the attachment for its truthfulness. *See id.* at 167–69; *see also Wallace v. Baylouny*, No. 1:16-cv-47, 2016 WL 3059996, at *4 (E.D. Va. May 31, 2016).

Tortious interference is a common law tort historically rooted in the concept that contractual rights include the right to seek redress against a third party interfering with an existing or expected contract between two parties. *Dunlap v. Cottman Transmission Sys., LLC*, 754 S.E.2d 313, 318 (Va. 2014). Under Virginia law, to support a tortious interference claim, Plaintiffs must allege: (1) the existence of a valid contractual relationship or business expectancy; (2) the relationship or expectancy was known by the interfering party; (3) intentional interference induced or created a breach or termination of the relationship or expectancy; and (4) damage occurred to the party whose relationship or expectancy was disrupted. *Southprint, Inc. v. H3, Inc.*, 208 F. App'x 249, 252 (4th Cir. 2006) (citing *Duggin v. Adams*, 360 S.E.2d 832, 835 (Va. 1987)).

To support a claim that Defendants disrupted a business or contractual expectation, Plaintiffs must show that the interference was purposeful, and the interfering party employed "improper methods." *Duggin*, 360 S.E.2d at 835–36 (quoting *Hechler Chevrolet v. Gen. Motors Corp.*, 337 S.E.2d 744, 748 (Va. 1985)). Improper methods may include the following: "violence, threats or intimidation, bribery, unfounded

13

litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, breach of a fiduciary relationship, violation of an established standard of a trade or profession, unethical conduct, sharp dealing, overreaching, or unfair competition." *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 732 S.E.2d 676, 688 (Va. 2012) (citing *Duggin*, 360 S.E.2d at 836–37). "[M]ere proof of a plaintiff's belief and hope that a business relationship will continue is inadequate to sustain the cause of action." *Com. Bus. Sys., Inc. v. Halifax Corp.*, 484 S.E.2d 892, 897 (Va. 1997).

    Conspicuously absent from Plaintiffs' Complaint are concrete facts that support a plausible claim for tortious interference. First, Plaintiffs have not specifically shown a business expectancy that was lost due to Defendants' interference. The Complaint states generally that Plaintiffs lost customers as a result of Defendants' tactics (Compl. ¶¶ 105, 128), but does no more to demonstrate an actual business expectancy such that, but for Defendants' actions, the business expectancy would have been realized. *See CSX Transp., Inc. v. Norfolk S. Ry. Co.*, No. 2:18CV530, 2019 WL 4564564, at *16 (E.D. Va. Sept. 9, 2019). In *CSX Transportation*, the plaintiff alleged that the defendants charged exorbitant rates to use certain railway tracks and caused the plaintiff to be unable to obtain certain contracts. *Id.* at *2–3, 15. However, the court found that, because the plaintiff "failed to name or identify an actual third party with whom [the plaintiff] would engage in business," the plaintiff did not adequately plead a business expectancy. *Id.* at *16. Plaintiffs here have only made conclusory statements that Defendants would "steer and attempt to steer customers away from Plaintiff's business [sic]." (Compl. ¶ 128.)

14

Although Plaintiffs list examples of the actions Defendants took, the Complaint is devoid of any evidence showing a specific business expectancy that was disrupted. Simply an expectation of continuing business from Defendants' customers is insufficient to rise to the level of a valid business expectancy. *See Com. Bus. Sys., Inc.*, 484 S.E.2d at 897.

Furthermore, it is unclear whether Defendants employed "improper methods." Though Plaintiffs allege that Defendants made misrepresentations, Plaintiffs in fact admit that Defendants' were not untruthful. (Compl. ¶¶ 105, 109.) A truthful statement is not a misrepresentation and cannot rise to the level of improper conduct. *See Magnuson v. Peak Tech. Servs., Inc.*, 808 F. Supp. 500, 516 (E.D. Va. 1992) (holding that false statements are sufficient to present improper methods for a tortious interference claim). Additionally, though certain actions may be distasteful or disagreeable, actions that are legal cannot lead to improper methods. *See Frank Brunckhorst Co., L.L.C. v. Coastal Atlantic, Inc.*, 542 F. Supp. 2d 452, 464 (E.D. Va. 2008) (holding that the counterclaim plaintiff failed to state a claim when both parties were distributers of deli products, and the counterclaim defendant threatened to withdraw its products from customers because the actions "were within its legal rights. . . . and is the essence of competition in a free market society"). Assumptions and implications of Defendants' truthful statements do not rise to the level of intentional interference and improper methods as it is within Defendants' rights to communicate truthful information to its customers.

Moreover, Plaintiffs have also failed to clearly state how they were damaged by Defendants' purported improper conduct. Although Defendants' customers constitute the majority of Plaintiffs' business, Plaintiffs simply state that they were "damaged" and

15

have not alleged any concrete harm that resulted from a lost customer or business expectancy. (Compl. ¶ 130.) A conclusory statement that they were damaged is insufficient to state a plausible claim for tortious interference.

Not only have Plaintiffs failed to allege a business expectancy, improper methods, or damages, but Plaintiffs have also not alleged that they are in a competitive relationship with Defendants. Courts have held that an unstated element of tortious interference under Virginia law is "a competitive relationship between the party interfered with and the interferor." *17th St. Assocs.*, 373 F. Supp. 2d at 600 (collecting cases). Additionally, there must be some contact between the defendant and the plaintiff's potential business expectancy. *Id.* Though Defendants did clearly have contact with many of Plaintiffs' potential customers, there is not a competitive relationship between the parties. *See id.* Defendants are insurance companies that provide automobile insurance while Plaintiffs provide automobile repair services. Thus, Plaintiffs have failed to state a prima facie case for tortious interference with a business expectancy.

Plaintiffs argue that the Eleventh Circuit's en banc decision is controlling here and precludes this Court from finding the tortious interference claim inadequately pled. However, the Eleventh Circuit specifically limited its analysis to whether the Complaint provided sufficient notice to Defendants of the alleged conduct. *Quality Auto*, 917 F.3d at 1275. Though the court could not conclude that Plaintiffs' "failure to identify particular customers who were steered away constitutes a failure to give each defendant fair notice of the claim against it," the court specifically did "not address the merits of the tortious interference claims." *Id.* Plaintiffs' Complaint consists of entirely conclusory

statements merely reciting the elements of a tortious interference claim. Plaintiffs' allegations may be sufficient to provide fair notice of the alleged claims, but they do not support a prima facie case for tortious interference with a business relationship under Virginia law.

### III. CONCLUSION

In sum, the Court exercises its discretion to retain supplemental jurisdiction over Plaintiffs' tort claims but finds that the parties have failed to state a claim. Although Rule 15(a)(2) instructs that "[t]he court should freely give leave [to amend pleadings] when justice so requires," the parties stipulated that the Court may dismiss the tortious interference claim with prejudice if inadequately pled. (Jurisdiction Statement 6.) Accordingly, the Court will dismiss the matter with prejudice.

An appropriate Order will accompany this Memorandum Opinion.

                                                      /s/
                                  Henry E. Hudson
                                  Senior United States District Judge

Date: Aug. 13, 2021
Richmond, Virginia